## Conrad & Fabel v. Huff & Brock.

(Case No. 1168.)

1. Contract.— A defendant, sued on promissory notes, showed that after their execution he delivered to the payee certain cattle, under a contract by which the payee should slaughter them for defendant's account, receiving therefor one dollar per head and expenses of slaughtering; and that he should retain from the proceeds enough, *first*, to reimburse him for moneys advanced defendant after the notes were executed; and *second*, the balance remaining should be credited on the notes. *Held*,

(1) If the payee failed to render defendant an account of the business, that fact did not annul the contract, or entitle the defendant to the full value of the cattle, for this the plaintiff had not agreed to pay.

(2) The rights of the parties must be measured by their contract.

(3) The defendant, in the absence of an account rendered, should have shown what the proceeds of the enterprise ought to have been under prudent management.

(4) An instruction that defendant, in the absence of an account rendered by plaintiff, was entitled to a credit on his notes for the value of the cattle at the place of delivery, was erroneous.

Error from Caldwell. Tried below before the Hon. John P. White.

Suit by Conrad & Fabel, as partners, against T. H. Huff and A. L. Brock. Plaintiffs alleged the execution and delivery by Huff to them of two promissory notes, one for $4,100, gold, and the other for $2,373.55, currency; that the payment of these notes was secured by a deed of trust executed by Huff to Edwin Lilly, trustee, conveying certain stocks of cattle, described by marks and brands, and running in Caldwell and adjacent counties; that Huff, colluding with Brock to defraud them, entered into a pretended contract of sale, by which he pretended to convey a portion of the cattle conveyed to Lilly in trust; that he gathered and delivered to Brock three hundred and fifty of these cattle, which were driven out of the state and converted to the use of the alleged confederates in the fraud, to the damage of plaintiffs in the sum of $5,000, and causing the loss of their security and debt; and asked judgment against defendants jointly for the same.

Defendants put in a general demurrer and pleaded the general issue. They also pleaded, specially, payment by Huff of the notes sued on, by delivery at different times of cattle sufficient to discharge the amount of the debt, and in excess thereof; for this excess and for the sum of $1,500, the price paid by Gilbreath at a sale under the trust deed, by Lilly; and for the value of one thousand five hundred head sold by Lilly, amounting to $6,000, with

damages amounting to $2,000. Huff prayed judgment in reconvention against plaintiffs.

The whole claim of Huff, pleaded in the same special plea of payment jointly with Brock, amounted to $21,452.

Brock, in a separate answer, pleaded a general demurrer, and that his purchase was in good faith; denying all fraud, and that he bought for a valuable consideration, which was paid. He also pleaded the statute of limitation of two years.

Plaintiffs afterwards amended their pleadings, and in reply to the pleas of defendants alleged that the cattle delivered by Huff to them were so delivered under a special contract, by the terms of which they were to be slaughtered, for their hides and tallow, by them, for account of Huff, and, after deducting the expense of slaughtering, the proceeds of the sale of the hides and tallow were to be credited to the account of Huff with them; that apart from the notes Huff was indebted to them on an old account; and that under the contract for slaughtering, they made advances to Huff, all which were set forth in an account made a part of the amended petition. There seems to have been no judgment of the court upon the demurrers.

The jury found in favor of the defendant Huff, $7,517.90, coin, and in favor of Brock. Judgment was rendered accordingly. Motion for new trial overruled, and notice of appeal given; but the case was brought up by writ of error.

The charge of the court given is stated in the opinion.

The second and third assignments and exceptions were the admission of Huff's and Seeligson's testimony to prove the value of cattle in gross or on foot, when he (Huff) had testified that they were delivered to plaintiffs for a special purpose for his own account, they to account for the proceeds of the sale of hides and tallow, deducting one dollar per head for slaughtering, and other expenses.

*Stockdale & Proctor*, for plaintiffs in error.— Huff could only recover on this contract the value in market of the hides and tallow, less the expense of sale and slaughter. To allow him to recover the value of the stock on foot, was not only to vary the contract between the parties, but to create a contract entirely new and different.

*Jas. H. Burts* and *T. M. Harwood*, for defendants in error.
. . . 3. The second and third bills of exception are not well taken. They show that a contract had been made by which plaintiffs were to slaughter and sell the cattle, and, after deducting cer-

tain amounts agreed upon, to credit Huff with the net proceeds. Huff, after delivering them cattle from the first of the year until the month of August, 1870, went to Indianola and demanded the return sales of the produce of his cattle shipped. They informed him they had no return sales, and failed up to the day of trial to furnish them, although they had notice to produce them on the trial. They abandoned their contract and converted the cattle to their own use. It was their duty to account and to produce the return sales, so that Huff could see and know what had become of his property under their management on the contract they sought to invoke on the trial for their protection. Story on Bailments, sec. 191; Hatcher v. Pelham, 31 Tex., 201; Stephenson v. Price, 30 Tex., 715.

If there was any error committed in reference to this evidence, it was by Huff against himself, in not proving the highest price of cattle at Indianola between the time of delivery and the day of trial. If Huff does not complain of this mistake, surely Conrad & Fabel ought to be satisfied with it.

STAYTON, ASSOCIATE JUSTICE.— This action was brought by Conrad & Fabel to recover upon two promissory notes executed to them by Huff on the 5th of March, 1870, one of which was for $4,100, gold, due in four months, and the other for $2,373.55, currency, due in ninety days. These notes were given for borrowed money, and were secured by deed of trust on cattle and other property executed by Huff.

It was claimed that Huff had sold to Brock a portion of the cattle covered by the deed of trust, after the same was executed, and recovery was sought against him for the value of such cattle.

Huff, in his answer, alleged that after the execution of the notes he delivered to Conrad & Fabel at Indianola, Texas, a large number of cattle, and that it was agreed between him and them that the value of such cattle should be credited upon the notes sued upon; and that thereby the notes were paid, and that there was a large balance due to him.

He also set up other defenses growing out of a sale under the deed of trust which had been made, and claimed damages thereunder, all of which matters it is not necessary, in the view we take of the case, further to state or consider.

Brock alleged that he purchased cattle from Huff for a valuable consideration and without notice of the lien of Conrad & Fabel, and it is not necessary to consider his defense, there having been a verdict

and judgment in favor of Huff against Conrad & Fabel for $7,517.90.

It is admitted that the cattle delivered by Huff to Conrad & Fabel were not sold to them under an agreement that their value should be credited upon the notes sued upon; and that they were delivered to them under a contract that the cattle should be slaughtered by Conrad & Fabel on account of Huff, and that for their services in slaughtering the cattle they should retain out of the proceeds of the cattle $1.00 per head and the expense of slaughtering; and that they should also retain out of such proceeds, such sum as would reimburse them for money advanced to Huff after the execution of the notes, after which any balance remaining in their hands was to be credited upon Huff's notes.

After the notes sued upon were executed, Conrad & Fabel advanced large sums of money to Huff, which, with the compensation which Huff agreed to pay them for slaughtering the cattle, amounted to $7,640.94. The correctness of this statement was admitted by Huff on the trial. The proceeds of the cattle, as shown upon the trial by Conrad & Fabel, and not controverted by Huff, amounted to $9,687.30.

A full statement was made by Lilly (who seems to have been the manager and agent of Conrad & Fabel, also their book-keeper and person who had charge of this particular business) of the business between the parties, with the above result, and his testimony is in no way impeached. The cattle seem to have been slaughtered principally for their hides and tallow, in which business Conrad & Fabel were engaged at Indianola, Texas.

The delivering and slaughtering of the cattle ran from early in April to the latter part of November, 1870.

On the trial, Huff testified that in the month of August he called upon Conrad & Fabel for an account of the proceeds of cattle, and that they failed to render it.

The witness Lilly stated that in the month of August he rendered for Conrad & Fabel to Huff, an account of the proceeds of the cattle to that time, and also of moneys advanced to him, and statement of expenses of slaughtering, and gave copies of such statement.

The court, at the request of Huff, in effect charged the jury that, if Conrad & Fabel had failed to render to Huff an account of the proceeds of the cattle, that then they might find from the evidence the value of the cattle at the place at which they were delivered, in estimating the credit to which Huff was entitled. This charge was erroneous. If Conrad & Fabel had bought the cattle, the

jury, in the absence of an agreement between the parties as to the price of the cattle, might have made such an inquiry.

The pleadings of Huff alleged that he was to have credit for the value of the cattle; but his own evidence, as well as the evidence of Lilly, showed that the real contract between the parties was as hereinbefore stated. In reference to this matter there is no conflict of evidence, nor any controversy whatever.

The rights of the parties must be measured by their contract, and if Conrad & Fabel had failed to render to him an account of the business, that fact could not have annulled the contract and have entitled Huff to the full value of the cattle, something which Conrad & Fabel had never agreed to pay.

He was entitled to the proceeds of the cattle, and to have the same applied as a credit upon his notes, after Conrad & Fabel had deducted therefrom a sum equal to the money, with interest thereon, which they had advanced to him after the notes were executed, and the further sum which he had agreed to pay them for slaughtering the cattle and selling the proceeds; and was entitled to no more.

If he was of the opinion that the testimony of Lilly was not true, he should have brought testimony to show what the proceeds should have been with prudent management. So far as the record shows, he made no effort to do this, although he took the deposition of a person who was engaged in the same business at the time and place when his cattle were slaughtered.

Such testimony, it would seem, could have been easily procured; but even the difficulty of making such proof, if it existed, would not entitle Huff to ignore the contract under which the cattle were delivered. If Conrad & Fabel had stood silent and made no showing as to the proceeds of the cattle, great liberality in making proof should have been extended to Huff; but they made a showing through the person who had the best means of knowing the truth, and his statement bears no evidence that it is not full, complete, and in every respect correct.

Counsel for Huff estimate the value of the cattle delivered by him, after the notes were executed, at $9,944, which is as high an estimate as could be made under the evidence, if all the cattle claimed to have been delivered were actually delivered, about which the testimony was conflicting. After the execution of the notes sued upon, Conrad & Fabel advanced to Huff about $3,952, which, added to the notes which he had executed, amounted to about $10,425, from which, if we subtract $125, the value of a horse which Huff claimed to have sold to them, would leave still due to

Conrad & Fabel $256, exclusive of interest, allowing the full value of the cattle at place of delivery. Such, we have before said, could not be the measure of relief to the parties, and we only refer to it for the purpose of showing that, at the time the cattle were sold under the deed of trust, in any view of the case, a debt existed which authorized a sale to be made, and that therefore no damages could be recovered if the sale was fairly made; and for the further purpose of showing that, under no view of the case, could a judgment for Huff for $7,517.90 have been legally rendered.

On the trial Huff stated that, prior to the execution of the notes sued upon, he had delivered to Conrad & Fabel one thousand two hundred and eighty head of cattle of given value, but there is nothing in his pleadings which set up a claim therefor; but upon the contrary, the evidence shows that on the account between the parties prior to executing the notes for money borrowed, he was indebted to them in the sum of $174.44, which was not embraced in the notes. The notes, deed of trust, letters of Huff offered in evidence, and the whole tenor of the evidence, preclude the idea that Conrad & Fabel were indebted to Huff for cattle delivered upon the execution of the notes, and had there been pleadings in the case which authorized an inquiry into that matter, a finding therein in favor of Huff would not have been sustained by the evidence.

To permit the judgment in this case to stand would require us to disregard all legal principles and the plainest dictates of reason and right, and it will be reversed and the cause remanded, that the proper issues between the plaintiffs and both of the defendants may be properly tried.

REVERSED AND REMANDED.

[Opinion delivered December 15, 1882.]